Scott Joseph Faulkner
**FULL NAME**

N/A
**COMMITTED NAME (if different)**

Robert Presley Detention Center
**FULL ADDRESS INCLUDING NAME OF INSTITUTION**

P.O. Box 710 Riverside, CA 92501

2081164l9
**PRISON NUMBER (if applicable)**

**FILED**
CLERK, U.S. DISTRICT COURT

AUG 30 2023

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ rsm _____ DEPUTY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Scott Joseph Faulkner

**PLAINTIFF,**

v.

Alan Heidrich
David Lynn
Jeremy Harris

**DEFENDANT(S).**

**CASE NUMBER**

**5:23-CV-01784-ODW-JDE**

*To be supplied by the Clerk*

**CIVIL RIGHTS COMPLAINT**
**PURSUANT TO** *(Check one)*

☒ 42 U.S.C. § 1983
☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971)

JURY TRIAL DEMANDED

## A. PREVIOUS LAWSUITS

1. Have you brought any other lawsuits in a federal court while a prisoner: ☐ Yes ☒ No

2. If your answer to "1." is yes, how many? ___N/A___

    Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

a. Parties to this previous lawsuit:
   Plaintiff _____N/A_____

   _____

   Defendants _____N/A_____

   _____

b. Court _____N/A_____

   _____

c. Docket or case number _____N/A_____

d. Name of judge to whom case was assigned _____N/A_____

e. Disposition (For example: Was the case dismissed? If so, what was the basis for dismissal? Was it appealed? Is it still pending?) _____N/A_____

f. Issues raised: _____N/A_____

   _____

   _____

g. Approximate date of filing lawsuit: _____N/A_____

h. Approximate date of disposition _____N/A_____

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Is there a grievance procedure available at the institution where the events relating to your current complaint occurred? ☐ Yes ☒ No

2. Have you filed a grievance concerning the facts relating to your current complaint? ☐ Yes ☒ No

   If your answer is no, explain why not _My complaint is not related to the conditions of my confinement, but to the search and seizure of the arresting agency._

3. Is the grievance procedure completed? ☐ Yes ☒ No

   If your answer is no, explain why not _N/A, See #2_

4. Please attach copies of papers related to the grievance procedure.

## C. JURISDICTION

This complaint alleges that the civil rights of plaintiff _Scott Joseph Faulkner_
(print plaintiff's name)

who presently resides at _Robert Presley Detention Center, P.O. Box 710, Riverside, CA 92501_
(mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at

_1438 Freesia Way, Beaumont, CA 92223_
(institution/city where violation occurred)

on (date or dates) ___4/26/21___ , _____ , _____
(Claim I)                    (Claim II)            (Claim III)

**NOTE:** You need not name more than one defendant or allege more than one claim. If you are naming more than five (5) defendants, make a copy of this page to provide the information for additional defendants.

1. Defendant ___Alan Heidrich___ resides or works at
(full name of first defendant)
___660 Orange Ave, Beaumont, CA 92223___
(full address of first defendant)
___MET Officer___
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual ☒ official capacity.

Explain how this defendant was acting under color of law:
___WAS At all times a Sworn Peace Officer for the___
___City of Beaumont, CA___

2. Defendant ___David Lynn___ resides or works at
(full name of first defendant)
___660 Orange Ave, Beaumont, CA 92223___
(full address of first defendant)
___Detective___
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual ☒ official capacity.

Explain how this defendant was acting under color of law:
___WAS at all times a sworn Peace Officer for the___
___city of Beaumont.___

3. Defendant ___Jeremy Harris___ resides or works at
(full name of first defendant)
___660 Orange Ave, Beaumont, CA 92223___
(full address of first defendant)
___Sergeant___
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual ☒ official capacity.

Explain how this defendant was acting under color of law:
___WAS at all times a sworn Peace Officer for the___
___city of Beaumont, CA.___

4.  Defendant _____ N/A _____ resides or works at

       (full name of first defendant)

       _____

       (full address of first defendant)

       _____

       (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual ☐ official capacity.

Explain how this defendant was acting under color of law:

_____

_____

5.  Defendant _____ N/A _____ resides or works at

       (full name of first defendant)

       _____

       (full address of first defendant)

       _____

       (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual ☐ official capacity.

Explain how this defendant was acting under color of law:

_____

_____

## D. CLAIMS*

### CLAIM I

The following civil right has been violated:

My fourth Amendment right of the United States Constitution against illegal search and seizure.

Supporting Facts:  Include all facts you consider important.  State the facts clearly, in your own words, and without citing legal authority or argument.  Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

1. On 4/24/21, Plaintiff WAS arrested by Beaumont Police Department.

2. In the early morning hours of 4/25/21, Officer Alan Heidrich, Detective David Lynn and Sergeant Jeremy Harris executed a search warrant of Plaintiff's residence: 1438 Freesia Way Beaumont, CA 92223. (See Attached)

3. Upon Completion of the search warrant, Defendants Knew Plaintiff lived at the residence with his wife and two sons.

4. Defendants also Knew Plaintiff's sons had been picked up by Plaintiff's wife's parents and taken to their residence.

5. On the morning of 4/26/21, Plaintiff's mother-in-law (cont. on next page)

*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.

Scott Joseph Faulkner
2021116419
Robert Presley Det Center
P.O. BOX 740
Riverside, CA 92501

Supplemental Facts     Pg 1 of 5

1  LAURA Orendorff, called Officer Heidrich stating she
2  located a shaving RAZOR in the bathtub of the
3  master bedroom that she believed WAS connected
4  to the ARREST.
5
6  6. Plaintiff's mother-in-law allowed Officer Heidrich
7  to respond to Plaintiff's residence to collect the razor.
8  Officer Heidrich IS AWARE that Plaintiff's mother-in-law
9  does not live in Plaintiff's residence and therefore
10 cannot consent to Officer Heidrich entering
11 Plaintiff's residence.
12
13 7. OFFicer Heidrich still entered the Plaintiff's
14 residence and collected the razor from the bathtub
15 for evidence to be used against the Plaintiff.
16
17 8. Throughout Officer Heidrich's police reports, he almost
18 always documents events clearly, with dates, times,
19 locations and names of any contacts he has. He also
20 usually notes that the contact was recorded via
21 body camera.
22
23 However, the contact with Plaintiff's mother-in-law
24 and the subsequent recovery of the razor is
25 noticeably lacking any details. On page 3 of his
26 initial report, in the first paragraph, he writes
27 "The RAZOR WAS later collected at V-1's house. (See
28                    Civil Rights Complaint 1st

Scott Joseph Faulkner
2021 16419
Robert Presley Det Center
P.O. Box 710
Riverside, CA 92501

Supplemental Facts      Pg 2 of 5

1  Detective Lynn's supplemental report)"

2

3  9. In the Plaintiff's experience as a former

4  sworn peace officer, it would be completely

5  unreasonable to enter a residence to collect

6  evidence from someone who has no standing

7  at that location.

8

9  10. Also, in Plaintiff's experience, it would be

10 very unusual to document an important contact

11 such as this in one vague sentence. What some

12 might refer to as "A smoking gun" piece of

13 evidence would be prominently documented

14 with dates, times, locations and persons. It would

15 also be thoroughly photographed and recorded

16 on body camera.

17

18 11. On page 2 of Detective Lynn's initial report,

19 at the end of the third paragraph, he writes,

20 "Officer Heidrich later collected the razor blade.

21 See Officer Heidrich's report for further

22 details." Except there are no further details

23 in Heidrich's report.

24

25 12. Detective Lynn's documentation of the recovery

26 of the razor is in the middle of his description

27 of the search warrant and reads as if the

28          Civil Rights Complaint

Scott Joseph Faulkner
Robert Presley Detention
P.O. Box 710
Riverside, CA 92501

## Supplemental Facts          pg. 3 of 5

1  RAZOR WAS collected during the SEARCH WARRANT

2

3  13. On page 5 of Detective Lynn's initial report

4  he writes, "During the active investigation,

5  Officer Heidrich was contacted by the mother

6  of the victim. She allowed Officer Heidrich

7  to respond to the residence to collect a RAZOR

8  that was used on the victim on the night of

9  the physical Altercation. The RAZOR was

10  later collected and provided to me by Officer

11  Heidrich." Again, a specific time and date are

12  left out of the report!

13

14  14. Officer Heidrich knew or should have known

15  that the search and seizure of the RAZOR

16  was a violation of Plaintiff's fourth Amendment

17  rights of the U.S. Constitution. The documentation,

18  or lack there of, in his report leaves little

19  doubt as to intent.

20

21  15. Detective Lynn, by title alone, has extensive

22  training and experience, He knew or should

23  have known the search and seizure of

24  the RAZOR was a violation of Plaintiff's

25  fourth Amendment rights. The documentation,

26  or lack there of in his report leaves little

27  doubt as to intent.

28                    CIVIL RIGHTS COMPLAINT

Scott Joseph Faulkner
2021164'9
Robert Presley Detention
P.O. Box 710
Riverside CA 92501

## Supplemental Facts                pg. 4 of 5

1  16. Despite Knowing how the RAZOR WAS
2  collected, Detective Lynn still booked it as
3  evidence to be used against the Plaintiff.
4
5  17. Sergeant HARRIS, the direct supervisor to
6  Officer Heidrich and Detective Lynn, reviewed
7  and approved their reports. Sergeant Harris,
8  by title alone, has extensive training and
9  experience. He knew or should have known
10  the search and seizure of the RAZOR WAS A
11  Violation of Plaintiff's fourth Amendment
12  rights, yet he still approved the reports
13  and the actions of Officer Heidrich and Detective
14  Lynn.
15
16  18. The Plaintiff, a former sworn peace officer,
17  has training and experience on search and
18  seizure. It is prominently covered in the police
19  Academy and during field training. Any
20  reasonable officer would know this search
21  and seizure was improper.
22
23  19. On 4/26/21, Around 1230 hours, Officer Heidrich
24  went to the hospital to interview my wife,
25  Nicole Faulkner.
26
27  20. Officer Heidrich tells Nicole he recovered a
28            CIVIL RIGHTS Complaint

Scott Joseph Faulkner
2021164919
Robert Presley Detention
P.O. Box 710
Riverside, CA 92501

Supplemental Facts                    pg. 5 of 5

1  RAZOR he believes was used to cut her arm.
2  (As seen on his body camera video recording)
3
4  21. Officer Heidrich asks Nicole for consent to
5  search the residence (1438 Freesia Way) again.
6  He signs the consent form on her behalf.
7  However, he never returns to Plaintiff's
8  residence. By vaguely documenting the recovery
9  of the razor and then obtaining a consent to
10 search form, Officer Heidrich attempts to
11 have the recovery of the razor appear proper.
12
13 22. It should be noted that although the search
14 and seizure took place on 4/26/21, the
15 Plaintiff was not aware of the details
16 until 9/21/21. The Plaintiff has been in custody
17 since 4/25/21. On 9/21/21 the Plaintiff was
18 provided discovery from Plaintiff's
19 Attorney.
20
21 Pursuant to 28 U.S.C. 1746, I declare under
22 penalty of perjury that the following is
23 true and correct.
24
25
26
27    8/8/23
28              CIVIL RIGHTS Complaint

**E. REQUEST FOR RELIEF**

I believe that I am entitled to the following specific relief:

1. A declaratory judgment that the defendants actions complained of herein violated plaintiff's rights under the U.S. Constitution and as otherwise alleged herein.

2. Award plaintiff monetary damages, compensatory and punitive, in an amount to be determined at trial.

3. Award plaintiff the costs of suit and reasonable attorney's fees if applicable.

4. Grant plaintiff such other and further relief as the Court deems just and proper.

_7/18/23_
*(Date)*

_____
*(Signature of Plaintiff)*

DR # 2104B-3123 - Supplement - 3 Report (Beaumont Police Department)

Pg 1 of 7

## DR # 2104B-3123 - Supplement - 3 Report

| REPORT DATE / TIME | EVENT START DATE / TIME - EVENT END DATE / TIME | PRIMARY REPORTER |
|---|---|---|
| Apr 25, 2021 13:19 | Apr 24, 2021 20:57 - Apr 26, 2021 00:00 | Alan Heidrich #1083 |
| SUPPLEMENT TYPE | | |
| Follow up report | | |

### NARRATIVE

SOURCE OF ACTION:

On April 24, 2021 at approximately 2057 hours, Beaumont Police Dispatch received an emergency call for service reference an in progress domestic violence incident occurring at ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇ The reporting party stated her 10 year old grandson called her on the telephone asking her to call the police. The reporting party stated that her grandson told her that his father, Scott Faulkner (DOB 01/28/1985) was yelling and punching things and that his mother, who will be referred to as "V-1" was screaming and he could hear her crying and saying stop.

When Officers arrived at the residence they could hear from the front door of the residence screaming and yelling from the upstairs area of the house. At that time Scott and V-1's two children ▇▇▇▇▇▇▇▇ came outside to awaiting Officers.

Once the children were safely outside, Officers stood by the open front door and called out for Scott and/or V-1. Scott walked to a landing on the second story of the residence, where Officers could see him. Scott refused to come downstairs to speak with Officers. Scott also refused to let Officers speak with V-1, stating she was asleep. At some point after negotiating with Scott, he walked down the stairs and stood near the front door. At that time Officers attempted to detain Scott so they could check on the welfare of V-1. Scott began to fight with Officers, and was eventually detained in handcuffs.

After detaining Scott, Officers went to the second story of the residence and located V-1 lying in the master bathroom bathtub, awake but unresponsive. V-1's face was severely bruised and bloodied. V-1's upper lip was split and both of her eyes were blackened. V-1 was then transported to RUHSMC in Moreno Valley for treatment of her injuries.

See Officer Kopitch's original Crime/Incident Report for further details.

Due to the severity of the injuries to V-1, Detective Sergeant Harris, Detective Lynn and I, Officer Heidrich, were called in to take over the investigation.

INVESTIGATION:

At approximately 2300 hours I arrived at the scene and contacted Sergeant Marsh. Sgt. Marsh briefed me of the incident and advised the injuries to V-1 were severe and there was a possibility that V-1 could succumb to her injuries. Sgt. Marsh also advised that Scott Faulkner had been detained and was currently being housed in a security cell at the Beaumont Police Department. At that time I authored a Search Warrant for the residence. The Search Warrant was signed by the Honorable Judge O'Rane on 4/25/2021, at 0157 hours. While writing the Search Warrant, Sgt. Harris and Detective Lynn interviewed Scott Faulkner (See Detective Lynn's supplemental report for further information).

At about 0230 hours, Sgt. Harris, Detective Lynn and I served the Search Warrant at the residence and processed the scene (See Detective Lynn's supplemental report for further information).

INVESTIGATION (CONT):

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
|---|---|
| Alan Heidrich #1083   Apr 26, 2021 18:40 (e-signature) | Jeremy Harris #905   Apr 27, 2021 09:07 (e-signature) |
| PRINT NAME | PRINT NAME |
| Alan Heidrich #1083 | Jeremy Harris #905 |

DR # 2104B-3123 - Supplement - 3 Report (Beaumont Police Department)                                                          Pg 2 of 7

On April 25, 2021, at about 1200 hours, I interviewed Scott and V-1's juvenile children (Referred to as J-1 and J-2) who were in the residence when the incident occurred. The following is a summary of their statements:

INTERVIEW: J-1 ▮▮▮▮▮▮▮▮▮:

I began the interview by asking J-1 if he knew his address. J-1 provided me his correct address. I asked J-1 how long he has lived at the residence and he stated since about 2016. J-1 stated he lived in the City of Palm Desert prior to moving to Beaumont. J-1 stated he attends ▮▮▮▮▮▮▮▮▮▮▮▮ in ▮▮▮▮▮ and is in the ▮▮▮▮▮ After making small talk with J-1 I asked him if he knew why I was there to talk to him. J-1 said yes. I asked J-1 if he could tell me what happened and he told me the following:

J-1 stated he was in his bedroom when his brother, J-2 came into his bedroom and said that his dad was going to leave his mom forever. J-1 stated all of the sudden he heard his mom screaming "Stop" over and over. J-1 stated he knew something was wrong and he called his grandmother so she could call the police. J-1 stated prior to hearing his mom screaming he could hear his mom and dad arguing in their bedroom. J-1 thought he first started hearing the arguing at about 8 or 9 pm. J-1 stated that about 9:30 pm the arguing started getting worse and that is when he heard the loud banging and his mother screaming. J-1 stated he knew something was wrong and called his grandmother so she could call the police. J-1 stated he and J-2 waited in their bedroom until police arrived. Once police arrived his grandmother told J-1 and J-2 to go outside. J-1 and J-2 then quietly went outside to awaiting officers.

I asked J-1 if he has noticed any other incidents prior to last night. J-1 stated he has heard his mom and arguing in the past but never as bad as last night.

I asked J-1 if his dad was nice to him and J-1 said yes.

J-1 did not provide any further details and the interview was concluded.

I then spoke to J-2. The following is a summary of his statement:

INTERVIEW: J-2 ▮▮▮▮▮▮▮▮▮

I asked J-2 if he knew why I was there to talk to him. J-2 said yes, but then said he didn't know. I asked him what happened at his house last night. J-2 said his dad was beating up his mom (J-2 used a punching motion with his arms when he told me). I asked him how he knew and he said he didn't know but was safe in his brothers room. I asked J-2 if he heard anything and he stated he heard his mom screaming. I asked J-2 where his mom was when she was screaming. J-2 said in her bedroom. I asked who else was in the bedroom with his mom and he said "My dad"

J-2 could not provide any further details and the interview was concluded.

I then spoke with V-1's father, Robert ▮▮▮▮▮▮▮ Robert told me the following in summary:

INTERVIEW: Robert Orendorff ▮▮▮▮▮▮▮▮

I asked Robert if he knew of any domestic violence between Scott and V-1 prior to last night. Robert stated he was unaware of any physical altercations and V-1 had told him that Scott had never physically hurt her or the children. Robert did state that Scott had destroyed the house on a previous occasion but no one else was in the house at the time.

With no further information I concluded my interview with Robert.

REPORTING OFFICER SIGNATURE / DATE
Alan Heidrich #1083   Apr 26, 2021 18:40 (e-signature)
PRINT NAME
Alan Heidrich #1083

SUPERVISOR SIGNATURE / DATE
Jeremy Harris #905   Apr 27, 2021 09:07 (e-signature)
PRINT NAME
Jeremy Harris #905

DR # 2104B-3123 - Supplement - 3 Report (Beaumont Police Department)                                                    Pg 3 of 7

## INVESTIGATION (CONT):

After speaking with the children and Robert I contacted Riverside University Health Systems Medical Center (RUHSMC), where V-1 was being treated. I was advised that V-1 was currently in the Emergency Room and was in and out of consciousness. I was advised that V-1 was unable to speak at this time due to her injuries and medication. In addition to the visible injuries, V-1 had a lacerated liver and her left arm had several cuts from a possible razor. The razor was later collected at V-1's house (See Det. Lynn's supplemental report).

On April 26, 2021, at about 1230 hours I was able to interview V-1 in ▮▮▮▮▮▮ of the Intensive Care Unit (ICU) at RUHSMC. The interview was audio/video recorded on my body worn camera. The following is a summary of V-1's statement:

## INTERVIEW: V-1:

V-1 stated she was in her bedroom with her husband, Scott Faulkner and they were talking about Scott leaving her. V-1 stated they were arguing for about 30 minutes, when all of the sudden, Scott threw her against the bedroom wall. V-1 said she slid down the wall and Scott began kicking her. V-1 stated she does not remember anything that happened to her after Scott started kicking her. I asked V-1 if Scott said anything as he was kicking her and she said she did not remember. I also asked V-1 if she thought Scott was going to kill her and she said it happened so fast she does not remember.

I then told V-1 she was located by police in her bathtub. V-1 stated she does not remember how she got from her bedroom to the bathtub. I asked V-1 about the injury to her left arm. V-1 stated she does not remember how the injury occurred and did not feel it happen.

I asked V-1 if Scott has ever been physical with her before this incident. V-1 stated no.

I then asked V-1 if she remembered calling the police in March reference a welfare check on Scott for taking unidentified pills. V-1 stated yes. I also asked V-1 if she recalled the damage Scott caused to their residence ▮▮▮▮▮ ▮▮▮▮. V-1 said yes. I asked V-1 why she thought Scott did these things. V-1 stated that Scott hates her. I asked V-1 why Scott hates her. V-1 stated that she caught Scott cheating on her eight times so she cheated on him. I asked V-1 if that was why Scott vandalized the car ▮▮▮▮▮▮▮ and she said yes. I asked V-1 if she thought these issues were the reason Scott attacked her and she said yes.

With no further information I concluded my interview with V-1.

Prior to leaving I took photographs (See attached) of the injuries to V-1's face, neck and left arm. The photos were later booked as evidence. Photos of the victim at her residence are also attached to this report.

## ADDITIONAL INFORMATION:

After speaking with the children and Robert, I located recent incidents involving Scott Faulkner (Beaumont Police Case numbers 2103B-2051 and 2103B-1962). The following is summary of the incidents:

2103B-2051: On March 17, 2021, Officers contacted a subject, later identified as Scott Faulkner in the process of vandalizing a vehicle. Scott was observed by officers using a knife to carve writing into the vehicles paint and all 4 of the cars tires were slashed. Scott stated to officers he thought his wife (V-1) was having an affair with the owner of the vehicle, which is why he was vandalizing it. Scott also told officers on scene that he was suicidal and was subsequently transported to ETS for a W&I code section 5150 evaluation. Charges for the vandalism were forwarded to the Riverside County District Attorneys Office for review (See report for further details).

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
|---|---|
| Alan Heidrich #1083   Apr 26, 2021 18:40 (e-signature) | Jeremy Harris #905   Apr 27, 2021 09:07 (e-signature) |
| PRINT NAME | PRINT NAME |
| Alan Heidrich #1083 | Jeremy Harris #905 |

DR # 2104B-3123 - Supplement - 3 Report (Beaumont Police Department)                                    Pg 4 of 7

2103B-1962: On March 16, 2021, Officers were dispatched to ████████████ (Scott Faulkner and V-1 residence) to document damages that Scott caused at the residence. V-1 called police stating that Scott had caused over $100,000 worth of damage to their residence. Scott admitted to causing the damage. The damage was documented by police, however, due to the property belonging to Scott, no charges were filed.

Additionally, On March 17, 2021, while Scott was detained (2103B-2051) V-1 called the Beaumont Police Department requesting a welfare check on Scott due to V-1 seeing Scott eating a large amount of unidentified pills.

ADDITIONAL INFORMATION (CONT):

During the initial call for service, an AFS check was done on Scott Faulkner. Scott was shown to own three firearms, however, none of the firearms were located inside of the residence. While interviewing V-1, she stated she had taken Scott's guns and left them at a friends house for safekeeping. V-1 did not elaborate on the reason she felt the need to leave them at a friends house. V-1 provided me the friends name, ████████████████████████████

On 04/26/2021, Detective Lynn and I made contact with ███████ at her address, ███████████████, ███████ ████ ████ provided me the following guns: Glock 26 Serial # WFR856, Glock 17 9mm Serial # THY259 and a Patriot ordnance 556 mm Serial # 3E1604901. The guns were entered into AFS and booked at the Beaumont Police Department for safekeeping (See Detective Lynn's supplemental report for further details).

While talking to ███████ she provided me additional information regarding Scott and V-1's relationship. The following is a summary of her statement:

INTERVIEW: ███████████

Colleen stated she has known V-1 and Scott for about three years, and that Scott used to be her sons football coach, which is where they met. Colleen stated that in or about January, 2021, Scott had went to an outpatient rehab for drug use. However, V-1 noticed that Scott was under the influence and made him go outside. While outside V-1 looked through Scotts phone and discovered Scott was having an affair. The following day V-1 contacted Colleen and advised her that she had taken Scotts guns from the house due to her and Scott fighting over a loaded gun. Colleen told V-1 that she would store the guns in her gun safe at her residence. V-1 then brought the guns to Colleen's house, where they have remained.

Colleen also stated that on several occasions V-1 came to the children's football practices with a black eye and/or bruises on her arms. V-1 told Colleen that she also suffered a concussion when Scott was having a bad dream and accidentally hit her in his sleep. V-1 told Colleen that the bruises on her arms were caused from working out at the gym and being anemic and the black eye was caused by one of her sons.

Colleen also stated that V-1 called her after Scott had caused extensive damage to their residence (2103B-1962). Colleen told V-1 not to go into the house, that Scott was going to kill her and to call police. Colleen stated V-1 showed her text messages from Scott, who was taking pictures of the damage as he was causing it and sending to the photos to her. Scott was also texting V-1 telling her he hopes she dies a slow miserable death.

Colleen also stated that earlier on the day of this incident, V-1's son, J-2 had told V-1 that Scott told J-2 that after today he would never see Scott again.

Colleen stated she has told V-1 several times during the past several months that she needed to leave because she thought Scott would kill her.

REPORTING OFFICER SIGNATURE / DATE
Alan Heidrich #1083   Apr 26, 2021 18:40 (e-signature)
PRINT NAME
Alan Heidrich #1083

SUPERVISOR SIGNATURE / DATE
Jeremy Harris #905   Apr 27, 2021 09:07 (e-signature)
PRINT NAME
Jeremy Harris #905

DR # 2104B-3123 - Supplement - 3 Report (Beaumont Police Department)                                                                Pg 5 of 7

Colleen stated she was willing to testify in court regarding her knowledge of V-1 and Scott's relationship.

With no further information, I concluded my interview with Colleen.

ADDITIONAL INFORMATION (CONT):

On 04/26/2021 at about 1500 hours, V-1's father, Bob███████contacted me stating that one of Scott's friends, Ryan████████ had stopped by V-1's and Scott's residence the day prior to this incident and was trying to get Scott to go stay with him or get him help. Bob stated he was not sure of the reason Ryan was there but thought Ryan may be able to provide me additional information. at about 1800 hours I attempted to contact Ryan. The call went to voicemail and a message was left. If/when Ryan contacts me a supplemental report will be added to this report with any information Ryan provides.

EVIDENCE:

All interviews were audio/video recorded on my body worn camera. The recordings were later downloaded into Intrensic as evidence.

Evidence collected at the scene was booked by Detective Lynn (See Detective Lynn's supplemental report for further information).

The three guns registered to Scott Faulkner were booked for safekeeping (See Detective Lynn's supplemental report)

Photos taken of V-1 at the hospital were burned to disc and booked as evidence.

ARREST:

Scott Joseph Faulkner (DOB: 01/28/1985) was arrested for violation of PC 664/187-attempted homicide, PC 273.5-domestic violence, PC 69-physical assault on Peace Officer, and PC 236-false imprisonment. Scott was booked at Smith Correctional Facility, booking number 202116419. Additional charges of PC 203-Mayhem and PC 206-Torture were added to the report after interviewing V-1.

CASE STATUS:

Closed by arrest. Additional charges of PC 203-Mayhem and PC 206-Torture were added to the report after interviewing V-1. Please Forward to the Riverside County District Attorneys Office for review.

## INVOLVED PERSONS

| INVOLVED PERSON-1 NAME (LAST, FIRST MIDDLE) | DOB / ESTIMATED AGE RANGE |
|---|---|
| P-1 ███████ | ███████ |

| SEX | RACE / ETHNICITY |
|---|---|
| ██ | ███████ |

| HOME ADDRESS |
|---|
| |

| INVOLVEMENT TYPE |
|---|
| ██████ |

| INVOLVED PERSON-2 NAME (LAST, FIRST MIDDLE) | DOB / ESTIMATED AGE RANGE |
|---|---|
| P-2 ███████ | ███████ |

| SEX | RACE / ETHNICITY |
|---|---|
| ██ | ███████ |

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
|---|---|
| Alan Heidrich #1083   Apr 26, 2021 18:40 (e-signature) | Jeremy Harris #905   Apr 27, 2021 09:07 (e-signature) |
| PRINT NAME | PRINT NAME |
| Alan Heidrich #1083 | Jeremy Harris #905 |

DR # 2104B-3123 - Supplement - 4 Report (Beaumont Police Department)

Pg 1 of 14

## DR # 2104B-3123 - Supplement - 4 Report

| REPORT DATE / TIME | EVENT START DATE / TIME - EVENT END DATE / TIME | PRIMARY REPORTER |
|---|---|---|
| Apr 26, 2021 08:15 | Apr 24, 2021 20:57 - Apr 25, 2021 02:00 | David Lynn #769 |

SUPPLEMENT TYPE

Supplemental narrative

### NARRATIVE

SOURCE OF ACTION:

On 04/25/21, at about 1030 hours, I was assigned to the Beaumont Detective Bureau and was contacted by Det. Sergeant Harris. Det Sergeant Harris asked me to respond to the (city of Beaumont), County of Riverside, in reference to a domestic violence incident. Det. Sergeant Harris said the female Victim was currently in Intensive care due to the traumatic injuries she had sustained. Det. Sergeant Harris told me the male suspect, Scott Faulkner (DOB: 1/28/1985), was currently in police custody at the Beaumont Police Department.

INVESTIGATION:

Based upon the information, I responded to the Beaumont Police Department, where I contacted Det. Sergeant Harris and MET Officer Heidrich. I was briefed on the following circumstances:

On April 24, 2021, at approximately 2057 hours, Beaumont Police Dispatch received an emergency call for service reference in-progress domestic violence occurring at █████████████████████████████████

INVESTIGATION: CONTINUED

Once briefed on the circumstances, I responded to the holding cell area inside the station. I contacted Scott Faulkner inside the holding cell. Before any questions regarding the incident, I read my department-issued Miranda card to him. Scott said he understood his rights. Scott said, "I don't want to talk. "Scott was advised that the Victim might not make it, and I would like to get his side of the story on what had happened. Scott said, "I don't want to talk." Once the pre-booking paperwork was completed, Scott was transported to Smith Correctional Facility by Officer Castro. For further details of charges, see Officer Heidrich's report. It should be noted Officer Castro assisted me and collected Scott's clothing and a cell phone at the jail. These items were later booked into evidence.

SCENE:

Based on Scott being transported to Smith Correctional Facility, I responded to █████████████████████████ ███████████████████ The following personnel were on scene and assisting with the investigation at the residence.

Det. Sergeant Harris

Met Officer Heidrich

Sergeant Marsh

Upon arrival, I observed a two-story residence positioned on the north side of the street and was taped off with police caution tape. I approached the residence and contacted Sergeant Marsh, who was in charge of the scene containment. Sergeant Marsh also briefed the above personnel regarding what had happened. Before entering the residence, I took photographs of the outside of the residence. I also observed a Beaumont Police Department shield

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
|---|---|
| David Lynn #769   Apr 27, 2021 08:47 (e-signature) | |
| PRINT NAME | PRINT NAME |
| David Lynn #769 | |

**Beaumont Police Department**
Mark43 RMS Form v2.0 generated by S. Doyle #1064 on Apr 27, 2021 09:41.

000035

Pg 1 of 14

next to the doorway of the entrance on the grass. Sergeant Marsh told me the shield was left in the same location where they were using it. I entered the downstairs living room/ kitchen area. I observed a cell phone on the kitchen counter, which was next to the backyard sliding door. I also located the victim's work identification picture, USPS (United States Postal Service), on the kitchen counter. Photographs were taken of this area.

I proceeded upstairs, where I observed an open space entertainment room on the west side. Upon walking past the entertainment room, I entered the first bedroom. This bedroom was the master bedroom, located on the northeast side where the victim and Scott reside. Upon entry, I observed several plastic containers stacked with clothes next to the west side of the doorway. Upon entering the bedroom, I observed a backpack (with clothes) on the bed. On the north/east side of the bed, I observed a black hair tie on the ground and several bloodstains on the carpet. Several feet from the hair tie on the north wall at the bottom of the base, I observed blood spatter.

I noticed the blood spatter expanded several inches upward on the wall and onto the floor. Next to the blood spatter on the right side of the wall was an impact hole into the drywall. The hole was approximately 4 ½ inches wide. I then entered the bathroom area. The toilet was separated from the bathtub in its closed area to the west. I did not observe any physical evidence in the bathroom area. Upon exiting the bathroom and entering the bathtub and sink area (towards the east). I observed dried blood on the sides of the bathtub and dried blood near the water faucet nozzle of the tub. Next to the faucet on the top was a yellow cup. Inside the bathtub was a black hoodie sweater, brown towel, and a razor blade at the bottom. It was discovered later in the investigation an unknown object had cut the victim's left arm. Officer Heidrich later collected the razor blade. See Officer Heidrich's report for further details.

While checking the bedroom for evidence, I located on top of the bathroom sink counter several unused 3ml disposable medical syringes. I located four opened syringes removed from the packaging. I observed two of the syringes had the needle exposed, and the needles were bent downwards. I continued checking, and underneath the bathroom sink cabinets, I located a box of 3ml disposable syringes still in packaging. I also found (6) glass brown vials underneath. The vials were labeled "Testo E 250" and Testosterone/Enanthate. Based on my experience and training, bottles were schedule three controlled substances and are an anabolic steroid. These items were later collected for evidence.

While continuing the investigation, I entered a walk-in closet just to the south of the bathtub. Inside the closet, I located Riverside County Sheriff's Department (Moreno Valley) uniforms. I did not observe any physical evidence inside the closet. I then exited the closet area and searched the master bedroom for any physical evidence. While searching, I located a dresser near the north/east wall, several feet in front of the bed. Upon going through the top right drawer, I observed a silver/black handgun. Upon further examination, I discovered the handgun was in fact an airsoft plastic BB gun. I discovered this based on my experience and training and by removing the magazine and visually observing the BB insertion location. While continuing to search the bedroom, Officer Heidrich located a plastic container near the bedroom door. Inside the plastic container, he found the following and was later collected for evidence.

1. Box of 9mm Winchester Full Metal Jacket (50 rounds labeled)-Later counted and contained 76 Luger rounds.

2. One round of 12 Gauge Buckshot-Green in color.

During the continuance of the investigation, no additional evidence was found inside the bedroom. The children's bedrooms located on the south side of the residence were searched; however, no other evidence was found. While upstairs, Det. Sergeant Harris checked the garage area for me. Det. Sergeant Harris located inside a cabinet inside the garage, an ammunition box of Winchester 5.56mm labeled to have 180 rounds. The box of ammunition was collected

REPORTING OFFICER SIGNATURE / DATE

David Lynn #769    Apr 27, 2021 08:47 (e-signature)
PRINT NAME
David Lynn #769

SUPERVISOR SIGNATURE / DATE

PRINT NAME

Beaumont Police Department
Mark43 RMS Form v2.0 generated by S. Doyle #1064 on Apr 27, 2021 09:41.

000036

Pg 2 of 14

for evidence. Det. Sergeant Harris also told me he located DNC (Dominion and control) belonging to Scott Faulkner, address, ███████████████████. The DNC was located inside the kitchen area on the kitchen counter near the sink.

Before leaving the residence, a secondary search and photographs were completed. The photographs and the following evidence were collected and later booked into evidence.

1. Box of 9mm Winchester Full Metal Jacket (50 rounds labeled)

2. One round of 12 Gauge Buckshot-Green in color.

3. DNC -Scott Faulkner

4. Box76 rounds 9mm Luger.

5.Black Samsung cell phone-Belonging to Scott collected at the jail.

6. Box 5.56mm 180 rounds

7. 6 vials

8 Scott's clothing collected from him at the jail.

INVESTIGATION: (CONTINUED)

On 04/26/21 at approximately 1400 hours, Officer Heidrich brought to my attention that when he had contacted the victim at the hospital, the victim told him that a family friend named ████████████████████was given Scott's firearms a few months prior.

I located the address for ███████████████████████, utilizing a law enforcement database. Officer Heidrich and I responded to the residence along with Det. Sergeant Harris.

Upon arrival at the above residence, we contacted ████████████and her husband, ███████████████████ ████████. Colleen told Officer Heidrich that she had been awaiting our arrival because of the recent incident. Colleen was asked if she had Scott's firearms, and she stated, "Yes." Colleen told Officer Heidrich that the victim had provided her with the firearm's back in January 2021 because of a recent argument. During the investigation, ████████████ exited his residence and brought out a black rifle case. I opened the case along with assistance from Det. Sergeant Harris. The following firearms were identified on-site.

1.Glock 26 handgun Serial#WFR856

2. Glock 16 handgun Serial# THY259

3.Patriot Ordance Rifle AR15 Serial# 3E1604901

These firearms were collected along with additional AR magazines, pistol magazines, and ammunition. I transported the firearms back to the station. For further details on Colleen's interview, see Officer Heidrich's report.

Upon arrival back to the station, I took photographs of the recovered firearms and ammunition. The below items were recovered and booked into evidence.

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
|---|---|
| David Lynn #769   Apr 27, 2021 08:47 (e-signature) | |
| PRINT NAME | PRINT NAME |
| David Lynn #769 | |

Black 30 round P-Mag

Black 30 round P-Mag

30 Rounds of 223 caliber

30 Rounds of 223 caliber

1 Glock 10 Round Magazine

10 Rounds of 223 in a plastic organizer

11 Rounds 9mm

18 Rounds 9mm

1 Glock 16 Round magazine

Glock 26 Serial#WFR856

GLOCK 17 Serial# THY259

Patriot Ordance AR 15 Serial# 3E1604901

Black rifle case

I packaged each item and booked them into evidence. Dispatch was contacted and entered the firearms into AFS.

PROPERTY/EVIDENCE SHEET

1. Box of 9mm Winchester Full Metal Jacket (50 rounds labeled)-76 Rounds total.

2. One round of 12 Gauge Buckshot-Green in color.

3. DNC -Scott Faulkner

4.Black Samsung cell phone-Belonging to Scott collected at the jail.

5. Box 5.56mm 180 rounds

6. 6 vials Testosterone

7. Scott's clothing was collected from him at the jail.

8.Black 30 round P-Mag

9.Black 30 round P-Mag

10.30 Rounds of 223 caliber

11.30 Rounds of 223 caliber

---

REPORTING OFFICER SIGNATURE / DATE

David Lynn #769    Apr 27, 2021 08:47 (e-signature)
PRINT NAME

David Lynn #769

SUPERVISOR SIGNATURE / DATE

PRINT NAME

**Beaumont Police Department**
Mark43 RMS Form v2.0 generated by S. Doyle #1064 on Apr 27, 2021 09:41.

000038                                    Pg 4 of 14

DR # 2104B-3123 - Supplement - 4 Report (Beaumont Police Department)

12. Glock 10 Round Magazine

13. 10 Rounds of 223 in a plastic organizer

14. 11 Rounds 9mm

15. 8 Rounds 9mm

16. Glock 16 Round magazine

17. Glock 26 Serial#WFR856

18. Glock 17 Serial# THY259

19. Patriot Ordance AR 15 Serial# 3E1604901

20. One razor blade containing skin matter

21. Black rifle case

ADDITIONAL INFORMATION

During the active investigation Officer, Heidrich was contacted by ▊▊▊▊▊ the mother of the victim. She allowed Officer Heidrich to respond to the residence, ▊▊▊▊▊ ▊▊▊▊▊ to collect a razor that was used on the victim on the night of the physical altercation. The razor was later collected and provided to me by Officer Heidrich. Upon examination of the razor, it appeared to have skin matter inside the razor blade. The razor blade was placed into a paper bag and booked into evidence.

CASE STATUS

CLOSED.

## INVOLVED PERSONS

| INVOLVED PERSON-1 NAME (LAST, FIRST MIDDLE) | | | DOB / ESTIMATED AGE RANGE | |
| --- | --- | --- | --- | --- |
| P-1 Faulkner, Scott Joseph | | | 1985-01-28 | |
| SEX | RACE / ETHNICITY | PHONE NUMBER | | |
| Male | White / Not Hispanic Or Latino | (714) 316-9689 (primary, Cellular) | | |
| HOME ADDRESS | | | | |
| 1438 FREESIA WAY, BEAUMONT, CA 92223 | | | | |
| INVOLVEMENT TYPE | | | | |
| Arrested | | | | |

## INVOLVED LOCATIONS

| LOCATION |
| --- |
| ▊▊▊▊▊▊▊▊▊▊ |

## VEHICLE / PROPERTY & ITEMS SUMMARY

| DESCRIPTION / MAKE / MODEL / COLOR | STATUS / DATE / REASON FOR CUSTODY | VIN # / SERIAL # | QTY | TOTAL ($) VALUE |
| --- | --- | --- | --- | --- |
| DNC -Scott Faulkner / White | Evidence / Apr 26, 2021 / Evidence | | | |

| REPORTING OFFICER SIGNATURE / DATE | SUPERVISOR SIGNATURE / DATE |
| --- | --- |
| David Lynn #769   Apr 27, 2021 08:47 (e-signature) | |
| PRINT NAME | PRINT NAME |
| David Lynn #769 | |



U.S. POSTAGE PAID
FCM LG ENV
HESPERIA, CA 92345
AUG 28, 2023
$9.97
R2305M147285-01

90012

Retail

RDC 99

CERTIFIED MAIL

7022 2410 0000 8226 8655

Scott Faulkner
2021116419
Robert Presley Detention Center
P.O. Box 710
Riverside, CA 92501

United States District Court
Central District of California
255 East Temple St, Suite TS-134
Los Angeles, CA 90012
Attention: Pro Se Clerk

008950